**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
                                                           :
**UNITED STATES OF AMERICA**                               :
                                                           :
         -against-                                         :         **07 CR 316-01 (CLB)**
                                                           :
**DON MAY,**                                               :
                                                           :
                   **Defendant.**                          :
                                                           :
-----------------------------------------------------------x

## SENTENCING MEMORANDUM
## ON BEHALF OF
## <u>DEFENDANT DON MAY</u>

**Dated:**    New York, New York
              July 13, 2007


                                        **Respectfully Submitted,**


                                        **HENRY PUTZEL, III**
                                        **Attorney for the Defendant**
                                        **    Don May**
                                        **565 Fifth Avenue**
                                        **New York, New York 10017**
                                        **Telephone: 212-661-0066**
                                        **Fax: 212-661-0415**

## **Preliminary Statement**

This memorandum is respectfully submitted on behalf of the defendant Don May in anticipation of the Court's imposition of sentence, currently scheduled for July 24, 2007.

In August, 2006 special agents of the United States Customs Service, acting pursuant to a warrant, seized eight computers and other material from the Westchester County home of Don May. On one laptop computer were stored a quantity of videos and still photographs depicting children engaged in sexual activity. By his guilty plea in this case, Mr. May has acknowledged that he unlawfully possessed child pornography in violation of Title 18, United States Code, Section 2252A(a)(5)(B) and (b)(2). At the outset of this memorandum, it is important to emphasize that, in making this submission, neither Mr. May nor his attorney seeks in any way to minimize the gravity of this offense. He fully understands that his possession of child pornography is a serious violation of the law, and by his plea of guilty he fully accepts responsibility for his misconduct.

At the same time that we acknowledge the gravity of the offense, we respectfully ask the Court to place it in the context of an otherwise law-abiding life lived with genuine decency toward his family, his friends and his community. We shall show that the acquisition of the pornographic material for which Don May is to be sentenced stemmed in principal part from the chronic depression and attendant substance abuse from which he has suffered at various times during his life and which, at the time that he acquired the

1

vast majority of the unlawful materials, was a dominant influence upon him. Most important, however, we shall also show – from two separate psychological evaluations, from a forensic examination of the computer where the electronic images were stored and from the letters of numerous friends and colleagues – that Mr. May is not and has never been a pedophile; that he has never engaged or attempted to engage in any sexual activity with children but, to the contrary, has been a loving and supportive father for his two daughters and a law abiding, charitable and constructive member of his community.

We are well aware that the sentencing guidelines applicable to the instant offense, although no longer mandatory, suggest a net offense level of 28 and a consequent sentence of imprisonment for 78-97 months, and we further acknowledge the recommendation of the United States Probation Office that the defendant be incarcerated for a period of three years. On the basis of the factors enumerated above and the entire factual record underlying this case – and by reference to the provisions of Title 18, United States Code, Section 3553(a) – we shall  respectfully ask the Court to impose a sentence without incarceration or, in the alternative, to impose a sentence of incarceration that gives credit to Mr. May for the period since his arrest in this case on October 6. 2006, during which time, he has been placed upon home confinement with electronic monitoring pursuant to the mandatory provisions of the Title 18, United States Code, Section, Section 3142(c)(1)(B).

## Don May's Personal Background

In order for the Court to understand the reasons why the defendant possessed child pornography, we must start with a brief summary of his personal background, much of which is movingly described in the letter from his sister Michelle Berger (Tab B[1]) and is accurately summarized in the Pre-Sentence Report of the United States Probation Office ("PSR"[2]). As both Mr. May and his sister have recounted, the defendant's family has a "long history of severe depression", and Don May grew up without significant emotional support from either parent. Mr. May was born in 1960 in the suburbs of Chicago, Illinois, where his parents then resided, but in 1973 his mother moved permanently to Israel, where she remained for the balance of her life, leaving her daughter and 13-year old son in the sole care of their father. A year later, after her high school graduation, Michelle joined her mother in Israel. "Don wanted to join us, but it was determined by my father and mother that he would stay with my father in Skokie, Illinois because otherwise it would have been too difficult for my father to live on his own." At the age of 14 the defendant was left largely to his own devices, and shortly thereafter, starting at the age of 14, when his father failed to provide effective supervision, Don May increasingly turned to cigarettes, alcohol and marijuana. At the same time, because of his prodigious intellect,

---

[1]References to Tabs in this submission are to the letters addressed to the Court which have been written by friends and family of the defendant and forwarded to counsel for Mr. May for submission to the Court.

[2]*See,* PSR, pars. 38-51.

3

he was able successfully to finish high school and college.

In 1981, during a trip to Israel, Mr. May met his wife-to-be Dalia; they were married in 1982. At her insistence (and as a condition of their marriage), the defendant fully stopped using drugs, smoking and abusing alcohol and remained abstinent for the ensuing 18 years, during which his career blossomed. After briefly working as a corporate pilot and flight instructor, he enrolled in the Business School of the University of Chicago, received his M.B.A. (in finance and econometrics) in 1987 and his Ph.D. in 1993. Thereafter, for four years, he served as Assistant Professor at the Sloan School of Management at M.I.T., where he taught courses in finance and accounting.

Don May's two daughters Sycamore and Gabrielle were born, respectively, in 1993 and 1995. By all accounts, their influence on his life has been profound and wholly beneficial. Reciprocally, Mr. May has been a steadfast, model father to each of his children. Letter-after- letter to the Court describes Don May's devotion to his daughters: his willingness to change jobs in order to spend more time with them, his coaching of their athletic teams[3], his patient work with each girl both in her schoolwork and in coping with significant physical and emotional afflictions[4]. Similarly, as the Pre-Sentence Report

---

[3]*See, e.g.,* the letter of Mr. Mark Weisser, a Chappaqua neighbor who co-coached their daughters in softball: "Don has been a great inspiration to all the players and his enthusiasm and supporting attitude has been very much admired by all the girls he has coached." (Tab C).

[4]Dalia May's letter to the Court (Tab B) notes that their elder daughter Sycamore has been diagnosed with Tourette's Syndrome and with Attention Deficit Disorder, and Gabrielle, the younger, has shown "obsessive characteristics that she then turns into repeated compulsive behavioral patterns", particularly during the absence of her father.

accurately recounts, Mr. May progressed from his prestigious teaching position to responsible positions as an economic consultant[5].

Notwithstanding a stable marriage, a deeply satisfying relationship with his daughters and a successful career both in academia and business, the psychological demons in Mr. May's life have demonstrably had a devastating impact upon him. As his sister recounts, the defendant's mother became increasingly unstable and manipulative during precisely the time when Mr. May's life was otherwise flourishing. She adamantly opposed his marriage to Dalia; from 1983 onward she became increasingly depressed and over the years made a number of unsuccessful suicide attempts by overdosing on medication, all of which were perceived by her family as cries for attention. In May, 1997 she jumped to her death from her Tel Aviv apartment. The defendant, unfairly blaming himself, soon resumed smoking marijuana and abusing alcohol. At length, at the urging of his wife and sister, he entered psychotherapy and temporarily discontinued this pattern of substance abuse.

In late October 2004, Mr. May's father, then residing in Florida, sustained grievous injury after slipping in a parking lot and seriously striking his head. He lapsed into an irreversible coma and was temporarily maintained on artificial life support. After consulting during an agonizing week with his father's doctors and his sister, Mr. May authorized the termination of the life support, and their father died. The sudden death of

---

[5]*See*, PSR pars. 76-81.

his father – only seven years after his mother's suicide – came as a devastating blow to the defendant. On the first anniversary of his father's death, Don May began again to abuse alcohol and marijuana, just as he had done in the aftermath of his mother's suicide. In late November of 2005 – during a holiday period when his father would traditionally have visited the family – Don May, in an increasingly depressed state, again spiraled into serious substance abuse. His downloading of the pornography that is at the heart of this case took place shortly thereafter, during the period at around Thanksgiving time, when by all accounts the defendant was profoundly depressed and was increasingly abusing alcohol and marijuana.

A paradoxical picture emerges from the foregoing. On the one hand, it is clear that during his lifetime Don May has forged a loving and supportive relationship with his wife and daughters and has achieved significant success in the business world. From the many letters submitted by his colleagues, friends and family (Tabs B and C), it is apparent that he has been a selfless, dedicated provider for his family, a capable, highly ethical

professional[6] and a productive, law abiding member of his community[7]. It is equally apparent, however, that the separate, traumatic deaths of each parent triggered in the defendant a profound clinical depression which, in turn, prompted him to abuse alcohol and marijuana. As we shall demonstrate – and as the independent evaluations of three doctors have confirmed – this psychological condition was the genesis for the offense that brings Mr. May before this Court.

### Facts Underlying the Instant Offense

In November, 2005, in the depressed emotional condition described above[8], Don May, answered an internet advertisement that brought him to the illegal website

---

[6]The quality of Mr. May's professional work – as well as the high ethical standards by which he has conducted himself – is capably described by his former colleague and supervisor Jeffrey L. Baliban, a senior vice president at NERA Economic Consulting, a reputable, widely recognized firm that specializes in analysis of economic and financial issues that often arise in complex litigation. In particular we respectfully refer the Court to Mr. Baliban's description of an incident in which Mr. May – based on his firm belief that "it would be unprincipaled to do so" – declined to apply a technical methodology that an important client was pressuring him to use in order to arrive at a particular, beneficial result. The incident epitomizes the high standards by which Mr. May has consistently conducted his professional life. *See*, Tab C.

[7]Ms. Berger mentions an incident that exemplifies that high ethical standards by which Mr. May conducted his business: "while working in a corporation that helped distressed firms, he had inside information on companies that were going to file for bankruptcy prior to any public announcements. Don told me that he would never use such information even though he personally could have profited from it, because he felt strongly that it was unethical and illegal to do so." Letter of Michelle Berger, Tab B, p. 3.

[8]In discussing the defendant's emotional condition at the time of the offense, we must also emphasize that Mr. May does not interpose his depression and substance abuse as a defense to his crime. In downloading and possessing the unlawful material, Mr. May demonstrably knew that he was acting improperly. In short, he does not interpose his emotional condition as an excuse or justification for his conduct but rather as important mitigating evidence that may explain the psychological reasons *why* he acted as he did.

referenced at par. 15 of the PSR. Using his own credit card and making no attempt to disguise his identity, Mr. May paid $80 and thereafter downloaded the vast bulk of the illegal child pornography that is the gravamen of the instant offense. Thereafter, except for some unsuccessful efforts to delete the offending files, he largely ignored the material until its seizure in August, 2006. The material consisted of the videos and other images described in the PSR. *See*, PSR, par 17.

It is noteworthy that at the time of the search Mr. May voluntarily identified for the agents the single laptop that contained the unlawful images. Of the eight computers seized from the defendant's home (including those belonging to his wife and daughters), the only computer found to contain illegal images was the single laptop to which he led them; the other computers (including the laptop that he was then using as his primary computer) were examined by Customs agents, found to contain no unlawful images and subsequently returned to Mr. May.

The defendant recalls that, although he looked at some of the files shortly after downloading them, he did not pay particular attention to individual images or videos, never obsessed over the material and does not recall re-opening the files during the ensuing months except for an unsuccessful effort at some point to delete some of the files. In short, although he admittedly downloaded and possessed the images on his laptop, Mr. May paid the material scant attention. Manifestly, he never searched for additional child pornography, printed, sold, emailed, transferred or showed the files to any other person.

8

Consistent with the foregoing, a forensic examination of the laptop in question reveals the following:

- "most of the images were placed on the computer over the course of a few days (based on the file creation date). This does not appear to be a chronic activity".

- "a pedophile performs searches on the Internet and actively seeks to obtain child pornography. There is no evidence of any such searches on Mr. May's laptop. In fact the searches are rather benign."

- "In summary the computer evidence is not indicative of the actions of a pedophile.... The near instantaneous access times for a large amount of the files [June 30, 2006, July 19, 2006 and August 22, 2006] are not indicative of human activity and are indicative of some systematic event" [such as a virus scan].(Tab D[9]).

### The Psychological Evaluations of Don May

The central question underlying this entire case asks why Don May – a capable, law-abiding professional with an unblemished history of support for his young daughters – obtained the offending pornography and stored it on his laptop computer. In short, did his conduct stem from deviant sexual impulses and pedophilic patterns of behavior or from other, more benign reasons? An important related question asks whether there is any evidence that Don May engaged in any improper conduct towards children. The undisputed evidence shows that Don May has led a law abiding life; that there has never been a hint or suggestion of improper sexual conduct toward children. Indeed, letter-after-

---

[9]The forensic examination of Mr. May's laptop computer is summarized in the letter of John W. Simek, attached at Tab D to the letters previously submitted to the Court. Mr. Simek's *curriculum vitae*, also attached at Tab D, shows the examiner to be a prominent expert in the forensic examination of computers, both in child pornography and other cases.

letter to the Court describes the defendant's loving, appropriate, wholly positive

relationship with his daughters and their friends and neighbors. There is, quite simply,

overwhelming evidence that, notwithstanding his *possession* of the unlawful images, the

defendant's *conduct* towards all children has always been appropriate in every respect.[10]

Following his arrest, the defendant was fully evaluated by Richard B. Krueger,

M.D. a respected clinical psychiatrist who specializes in the evaluation and treatment of

sexual offenders at the Sexual Behavior Clinic at the New York State Psychiatric

Institute.  His evaluation of Mr. May included use of an objective Abel Assessment and a

plethysmography, a physiological test to determine whether images of child pornography

sexually aroused the defendant in any way. In addition, at his direction, Mr. May

underwent a polygraph examination to address the central question whether Mr. May has

ever engaged in improper sexual conduct with children.[11]  On the basis of his entire study,

---

[10]Mr. May  fully appreciates the devastating harm that the making of the subject images had upon the young children who were depicted in the images, an impact heartbreakingly described in the Pre-Sentence Report, and he understands that even the mere possession of child pornography contributes indirectly to the exploitation of these victims. *See,* PSR, Pars. 18-19. In an effort to demonstrate his sincere recognition of this fact and his genuine contrition, the defendant has, in the nine months since his arrest, on five separate occasions supplied the government  with the email addresses and other contact information of anonymous individuals who have sent him email solicitations seeking to peddle child pornography. Although the limited resources of the United States Customs Service have apparently precluded any ensuing investigation, government counsel  will certainly confirm that Don May has unequivocally offered to assist in the investigation of these five separate matters and the prosecution of these individuals.

[11]In measuring Mr. May's firm assertions  that he has never engaged in a sex act with children, or approached or even attempted to contact a child for sexual purposes, the examiner concluded  "no deception indicated" *See,* Letter of Richard B. Krueger, M.D., p. 12 (Tab A).

10

Dr. Krueger concluded, "the best available objective measures for assessing deviant sexual interest, including penile plethysmography, viewing time and a polygraph, support the patient's report that he is not sexually interested in children and has not victimized or tried to victimize a child" and that Mr. May "does not have pedophilia" (Letter of Richard B. Krueger, pp. 15, 17)( Tab A).

Dr. Krueger's conclusion is fully supported by the separate evaluation conducted by Naftali G. Berrill, Ph.D. and Jennifer A. McCarthy, M.A. at the direction of the Court's Pre-Trial Services Office, which concludes, "...Mr. May does not appear to have a sexual interest in children/adolescents and does not present with antisocial tendencies beyond the instant offense. He reports that during the period that he was downloading child pornography, he was using both alcohol and marijuana and had discontinued his use of anti-depressants. While this does not diminish Mr. May's responsibility for his offense, it appears that his involvement in the offense may be best perceived as situationally induced, *i.e.,* the result of substance abuse, stress and diminished judgment." Dr. Berrill's Report to the Pre-Trial Services Office is extensively quoted in the PSR., par.68.

In September, 2006, following the search of his home and seizure of his laptop, the defendant entered the outpatient substance abuse program conducted by St. Vincent's Hospital, Harrison, New York and participated faithfully in its therapy sessions until his successful discharge from the program in January, 2007. He has remained drug-free since that time and continues to abstain from alcohol. In October, 2006, following his arrest, he

11

commenced psychotherapy with Thomas F. Hopkins, Ph.D., a psychotherapist to whom
he was referred by the Pre-Trial Services Office. He continues to see Dr. Hopkins in
individual psychotherapy sessions and will continue to do so[12]. Dr. Hopkins's letter to the
Court concludes:

> "In addition to my federal contract [with Pretrial Services] I have seen over 400
> sex offenders referred by New York State Department of Parole. These offenders
> are typically seen for the duration of their parole. Many of the offenders are
> designated Level 3 (high risk) and many include minor victims. By contrast I have
> seen no evidence that Mr. May has had any inappropriate contact with minors or
> shows a proclivity to do so. In my professional opinion he should not be judged to
> be a danger to children." (Tab A).

Thus, the evaluations by Drs. Krueger and Berrill, coupled with Dr. Hopkins's
considered opinion, all reach the same conclusion: that Mr. May's misconduct stemmed
not from pedophilia but from clinical depression, aggravated by substance abuse.

## Argument

As the Court knows, the United States Supreme Court has ruled that the Federal
Sentencing Guidelines (the "Guidelines") are advisory, not mandatory[13].   We

---

[12]As we shall discuss later in this submission, Mr. May intends to continue in
psychotherapy for the foreseeable future so that he may explore, understand and fully address the
psychological reasons why he downloaded the unlawful material.

[13]The Supreme Court in United States v. Booker, 125 S. Ct. 738 (2005), "did not
explicitly excise subsection 3553(b)(2), concerning the Guidelines ranges for child crimes and
sexual offenses." United States v. Crosby, 397 F.3d 103, 110 n.8 (2d Cir. 2005). However, the
Second Circuit has since indicated its inclination to apply Booker to such crimes as well. See
United States v. Sharpley, 399 F.3d 123, 127 n.3 (2d Cir. 2005) ("we see no unique feature of
Guidelines sentences for child crimes and sexual offenses that would prevent them from
violating the Sixth Amendment in the same manner as Guidelines sentences for other crimes . . .
For this reason, we suspect that the Supreme Court's failure to excise the entirety of Section
3553(b) was simply an oversight."). We submit that the Booker Court intended to apply its

respectfully submit that all of the facts and circumstances in this case, supported by the applicable case law, show mitigating circumstances in this case that, even after due consideration of the applicable guidelines, fully warrant the imposition of a non-custodial sentence.[14]

Pursuant to United States v. Booker, 125 S. Ct. 738 (2005) and the Second Circuit's subsequent decision interpreting Booker in United States v. Crosby, 397 F.3d 103 (2005), a sentencing Court should "consider" the Guidelines, as well as "all of the facts relevant to the determination of a non-Guidelines sentence." Crosby, 397 F.3d at 111, 112. There is no longer any formulaic application of the Guidelines or any "robotic incantations" required of the sentencing judge id. at 113, and, as this Court is well aware, it should consider all of the underlying facts and circumstances by reference to the factors set forth in Title 18, United States Code, Section 3553(a). As a result of such analysis, the Court must then impose a sentence "sufficient, but not greater than necessary" which is compatible with such factors. Id. In addition to these factors, §3553(a)(1) directs the court to consider the nature and circumstances of the offense and the history and characteristics of the defendant. Indeed, as the second circuit has re-affirmed, a court

---

holding to subsection 3553(b)(2) as well.

[14]As the PSR correctly notes, the offense charging Mr. May with possession of child pornography falls within Zone D of the sentencing guidelines, for which a sentence of probation would not technically be available if a guidelines sentence were to be imposed. See PSR, par. 91. However, because the guidelines are not mandatory, we submit that the Court is fully empowered to impose a probationary sentence. In the alternative, the Court could sentence Mr. May to an appropriate term of supervised release.

should fashion the lowest possible sentence that takes into account these statutory factors. *See*, United States v. Ministro-Tapia, 470 F. 3rd 137, 142 (2d Cir. 2006)("if a district court were explicitly to conclude that two sentences equally served the purposes of §3553, it could not, consistent with the parsimony clause, impose the higher one").

In discussing an appropriate sentence to impose in this case, we start with a brief consideration of the statute under which Mr. May stands convicted. The legislative history underlying Title 18, United States Code, Sections 2251 *et seq.*, convincingly shows that this statute, entitled "Sexual Exploitation and Other Abuse of Children," was intended to prevent the sexual abuse of minors. Congressional findings on this legislation noted that "[t]he Government has a compelling state interest in protecting children from those who sexually exploit them, including both child molesters and child pornographers." Pub. L. 108-21, Title V, § 501, Apr. 30, 2003, 117 Stat. 676. "Child pornography is often used by pedophiles and child sexual abusers to stimulate and whet their own sexual appetites, and as a model for sexual acting out with children." Pub. L. 104-208, Div. A, Title I, § 101(a) [Title I, § 121, subsection 1], Sept. 3, 1996, 110 Stat. 3009-26. And while the law clearly prohibits simple possession of child pornography, the vast majority of comments by members of Congress on the original proposed legislation and its amendments focused on prosecuting distributors of child pornography, on protecting children from exposure to offensive material, and on punishing child molesters, all factors demonstrably inapplicable to this case.

14

At least one sentencing court has applied the distinction to find that simple possession of child pornography – without evidence of distribution – was a basis for a downward departure, even under facts far more troublesome than those presented in this case. *See,* United States v. Corp, 236 F.3d 325 (6th Cir. 2001). In imposing a sentence well below the applicable sentencing guideline, the district court noted that defendant's possession of child pornography was "outside the heartland of the statute which is intended to punish people who engage in sexual abuse of minors by either abusing the minors or having pictures of such activity or sexual acts by minors."*Id.* at 327. The case serves to underscore the important distinction between Mr. May's possession of the offending images and the demonstrably more venal conduct of the purveyors of such material and those who use it to arouse deviant conduct. *Cf.* Ashcroft v. Free Speech Coalition, 535 U.S. 234, 250-251 (2002).

It is also appropriate to note that the guidelines applicable to this case would, if followed, require the Court to impose a sentence far more severe than is warranted under the facts of this case and are not a sensible measure of the defendant's conduct. The guideline analysis to which the parties have stipulated arrives at a net offense level of 28 with respect to the offense for which Mr. May is to be sentenced. Under such formulation, the Court would, if it followed the Guidelines, be required to impose a sentence in the range of 78-97 months. We respectfully submit that such sentence would far exceed punishment appropriate to Mr. May's conduct in light of the facts and circumstances

15

underlying this case. For example, Mr. May used a computer to download the pornographic images, some of which depict minors under the age of 12 years and contain images of sado-masochism; manifestly, the number of images in the defendant's possession exceeded 600. These several factors, which account for guideline enhancements of 13 points, boost the net offense level in this case from 15 to 28 (PSR, par. 3). But they simply do not measure Mr. May's actual misconduct. For example, the sheer number of images in a single video – far more than the requisite 600 -- shows that the objective number of images do not provide reliably measure his actions. Similarly, the content of the individual images was, quite simply, unimportant to him. Finally, his use of a computer to obtain the offending material (for which the guidelines would increase the offense level by 2 points) was in fact the least offensive method of obtaining the material, for it did not require that he deal with any other person. For these reasons, we respectfully submit that the sentencing guidelines do not properly measure the misconduct for which Mr. May should be sentenced.

With the foregoing considerations in mind, we turn to the essential facts underlying this case, none of which are in serious dispute:

- Don May is not – and has never been – a pedophile.

- Mr. May has never abused children nor shown any interest in doing so.

- Mr. May's acquisition and possession of unlawful child pornography stemmed not from any genuine interest in the offending material but from the clinical depression – aggravated by drug and alcohol abuse – diagnosed by each of the psychologists and psychiatrist who examined him.

16

- The defendant never shared, sold or otherwise transferred any of the unlawful material, nor did he search for additional material.

- Once having downloaded the material, the defendant did not obsessively examine each file; instead, the material remained stored in his laptop until its seizure by federal agents.

- Mr. May fully acknowledges that he must conscientiously confront and understand the psychological reasons for his self-destructive conduct, is pursuing those issues in psychotherapy with Dr. Hopkins and will continue to do so. Similarly, having confronted the pernicious influence of alcohol and drug abuse upon his depressive personality, he has successfully completed a course of therapy to address his substance abuse and is determined to live  drug and alcohol-free.

- Don May has demonstrated that his misconduct in this case represents a single aberration from an otherwise law-abiding lifetime of positive accomplishment, which include his constructive contributions to his community, the ethical manner by which he has conducted his professional life and, most significantly, his exemplary relationship with his daughters[15].

- Mr. May has responsibly notified the government and offered his assistance in investigating five separate instances during the past nine months in which internet purveyors of child pornography have sought to peddle such material.

- During the nine and one-half months since his arrest in this case, by mandatory operation of law, Don May has been placed upon home

---

[15] As Dalia May has described in her letter to the Court, her younger daughter Gabrielle "tends to become extremely anxious when any of us, Don especially, is not around the house...[S]he became extremely nervous and frightened when he had to travel for business." (Letter of Dalia May, Tab B, p. 2). Similarly, Ms. May notes her husband's unusually close and supportive relationship with their eldest daughter Sycamore, who suffers from Tourette's ndrome.  We respectfully ask the Court to consider these special circumstances in determining an appropriate sentence in this case. *See*, <u>United States v. Johnson</u>, 964 F. 2d 124, 129 (2d Cir. 1992); <u>United States v. Alba</u>, 933 F. 2d 1117, 1122 (2d Cir. 1991); <u>United States v. Gamez</u>, 1 F. Supp. 2d 62, 66 (E.D.N.Y. 1998).

confinement with electronic monitoring.[16]

We respectfully ask the Court to consider each of the factors summarized above, both individually and in combination, in determining an appropriate sentence to impose in this matter, and on the basis of these factors we respectfully urge the Court to impose a substantial sentence of probation, coupled with strict requirements that Mr. May continue in psychotherapy and that he remain drug and alcohol free.

We do not lightly make this request for lenity. Both Mr. May and his attorney fully comprehend that child pornography cannot exist in the world without the cruel exploitation of children, conduct that society cannot condone and which it must punish. We acknowledge that, even in possessing child pornography, Mr. May has committed a serious offense. At the same time, however, we respectfully ask the Court to understand that his conduct in this case did not stem from any wish to harm children but from psychological reasons that make this case genuinely different from the sort of conduct that the statute was framed to punish.

Having been convicted of this serious offense, having lost his means of employment and – with the stigma of this conviction – facing an uncertain future, Don May has already come to recognize the devastating, enduring consequences of his misconduct. Moreover, during the past nine and one-half months, except under limited

---

[16]*See*, United States v. Miller, 991 F. 2d 552,554 (9th Cir. 1993); United States v. Romualdi, 101 F. 3rd 971 (3d Cir. 1996). *Cf.*, United States v. Carpenter, 320 F. 3d 334, 345 (2d Cir. 2003).

18

circumstances, he has been restricted to his home. In short, the defendant has already been seriously punished as a result of his misconduct, and as a result of his conviction, the punishment will continue for the rest of his life. Under all of these circumstances, we respectfully ask the Court to impose a probationary sentence without further incarceration.

## **CONCLUSION**

For all of the foregoing reasons, we respectfully ask the Court to impose a sentence consisting of a significant term of supervised probation, subject to the standing probation order of the Court and to such special conditions as the Court may deem appropriate, including the defendant's continuation in psychotherapy and his remaining drug and alcohol free.

Dated:      New York, New York
            July 13, 2007

Respectfully Submitted,

HENRY PUTZEL, III
Attorney for the Defendant
Don May

19