Exhibit C

May 22, 2007

Honorable Charles L. Brieant
United States District Court
300 Quarropas Street
White Plains, New York 10601

Dear Judge Brieant

My name is David Bromberg and I am the CEO of Acappella Software Inc.

I understand that Don May is soon to be sentenced by you for possession of child pornography which I fully recognize is a very serious offense. I am writing on his behalf to provide you with information that I hope you will consider in imposing sentence.

I met Don May some six years ago as we watched our daughters in their Tai Kwon Do classes. While I worked on my computer, Don noticed my software and we began to talk. I found out that Don had just recently left his position as a consultant because it required too much travel and he wanted to be near his wife and children, one of which had been recently diagnosed with Tourette's Syndrome. At the time, Don was starting his own business working with his previous employers and clients.

We quickly realized that his financial consulting practice and my software could be a great fit and began a business relationship. We tried collaborating to win several clients and while we enjoyed the camaraderie and came to know each other well, together we did not have much business success. Don did seem to do well with individual consulting assignments even as we tried to partner on engagements. Don eventually went on to find a full-time position in litigation support consulting.

While he consulted, Don found the time and energy to be an adjunct professor at Iona College in New Rochelle, teaching undergraduate business classes. Don brought me into his classroom to co-teach courses on business decision making. Overall, the experience seemed to be a great success for students and teachers alike. Along the way, I got to see Don's deep dedication to teaching and mentoring. He was always well prepared and very dedicated to providing a meaningful educational experience to every one of his students.

As a further example of Don's dedication to others, he donates time and money to various charitable causes, coach's softball and is very much involved in his community.

Having observed Don in many of these capacities, I characterize him as a highly ethical, hard working, and devoted business person and family man. When we would talk about the nature of corporate life, I remember him noting how he deplored the fact that many consulting firms were charging clients a tremendous amount of money for very little value. Like me, he wanted to make sure the clients we won would be treated ethically and given the best and most valuable consulting or software services.

This July, Don will be married to his wife Dalia for 25 years. In September 2006, my family had the pleasure of attending his older daughter's Bat Mitzvah service and reception. Both his daughters presented themselves as lovely young women who have done quite well under Don and Dalia's care.

However, what struck me at this event was the limited extended family in attendance. The few relatives in attendance had to travel long distances to be there. The four of them (Don, Dalia, Sycamore, and Gabrielle) truly are a small nuclear family. I fear that a prolonged sentence for Don could be deeply difficult for his wife and children to get through. Both his daughters need his continued support, moral character, leadership and role modeling at this critical point in their lives.

It is my hope that you will consider all of this in your sentencing of Don May.

Sincerely,

David Bromberg

# BALIBAN

May 24, 2007

Honorable Charles L. Brieant
United States District Court
300 Quarropas Street
White Plains, New York 10601

Dear Judge Brieant

My name is Jeffrey Baliban and I am a senior vice president at an international economic research and consulting firm. Prior to his joining Analysis Group, Inc. in October 2006, Don May worked as a member of my group and under my supervision. During our joint tenure, Don was a close and trusted colleague. He has told me of his imminent sentencing in your court for his very serious offense. I am writing on his behalf to provide you with some insight into the individual I came to know and to trust, to which I hope you will give due consideration in imposing his sentence.

Our expertise as economists and financial analysts is often sought by trial attorneys in measuring and providing evidence of economic damages related to complex commercial disputes. While our engagements are typically on behalf of either plaintiff or defendant in a matter, it is always necessary for each of us to adhere to a set of core values that emphasize ethicality and high standards. Don and I worked together on many such projects, and I came to know Don as a committed and conscientious member of our team whose work embodied those values, and who displayed strong ethics in the discharge of his duties. Don often told me how impressed he was by a comment made to him by our former president, during Don's interview process, that our firm's economists prided themselves on their intellectual honesty, even if that meant giving a client bad news or refusing to support a client's desired conclusion. Throughout my experience with Don, he never forgot that the purpose of our engagements was to provide technical or specialized expertise in order to aid the trier of fact in an issue, not the trial attorney who hired us.

I have personally witnessed Don's adherence to this concept on many occasions. In one matter (for which our fees were considerable), I was called by a client to intervene in a disagreement he was having with Don on a technical matter, in which the client wanted Don to advocate a methodology that was advantageous to his case. However, Don found the method to be unsupported by economic theory as well as the available data. He refused to abide the client's wishes based on his firm belief that it would be unprincipled to do so. Even though this is a difficult stand to take with a client, Don's refusal to capitulate was adamant. As the ultimate author of the report, I agreed with Don's position and, the client, while not happy, accepted our conclusions. Such was the independent frame of mind and unbiased clarity of thought that I had come to expect, and on which I came to rely, from Don.

---

32 Washington Avenue • Westport, CT 06880
Tel 203.221.9249 • Fax 203.341.9624

# BALIBAN

As consultants, our work is very demanding and our projects often require large time commitments under tight deadlines.  Don was always someone on whom I could depend to get the work done, done right, and done on time.  He recognized a strong moral responsibility to the firm, was very conscientious in his efforts, and often worked late hours.  However, he tried never to let his professional life overshadow his commitment to his family.  He took great effort to organize his significant professional responsibilities in such a way as to have minimal impact on his being at home or attending events with his daughters.

My wife and I recently had the honor of attending Don's eldest daughter Sycamore's Bat Mitzvah.  Don's pride in his daughter and joy at this event were clearly evident.  I also know that Don and his wife Dalia will soon celebrate their 25th wedding anniversary, an event overshadowed by the family's current difficulties, but one I hope to see come to fruition.  I am aware that neither Don nor Dalia have significant extended family, and it has always been my impression that Don, Dalia and their two daughters are a tightly knit family, and depend on each other for support.

I appreciate this opportunity to provide these personal comments to you.  Despite the seriousness of this situation, it is my hope that, in your passing sentence on Don, you will consider my testament to his moral character, work ethics, his devotion to his family and, most importantly, their exigent need for his continued support.

Respectfully,

Jeffrey L. Baliban